The first argument this morning is Horizon Global Americas v. Curt Manufacturing, 2020-2203. Mr. Kupar. Thank you, Your Honor. It may have pleased the courts. The board erred in its application of the rule of reason test and the preponderance of the evidence standard. Applying the correct law, the evidence shows an invention reduced the practice before the McGrath priority date. Horizon asked the court to reverse the board's decision. Per the court's sua sponte order last Thursday, I'll first address the cited case law. Under Brown and Price, this court does not require further corroboration where a party seeks to prove prior inventorship through the use of physical exhibits. The trier fact can conclude for itself what documents show. For example, in Brown's physical evidence that was provided, there were notebooks from the inventor, Dr. Reese, as well as autoradiographs. Those documents did not require further corroboration to demonstrate the content of the physical evidence itself. Namely, that- Counsel, counsel, isn't it true, I'm sorry, this is Judge O'Malley, it's true, of course, that documents don't necessarily need further corroboration, but that's where the documents on their face disclose a level of reliability. You're talking about documents that, on a variety of matters, either were undated or there are photographs that were taken during the course or in preparation for the litigation. It's not a question of the board just saying that every document needed to be corroborated by a third party. They're just saying there's nothing on the face of the documents that gives them comfort that the documents say what the inventors claim they say. Yeah, and thank you, Judge O'Malley, and that's where the problem is. The documents themselves, in fact, the key inventive documents here, which are the invention disclosure record, which is Exhibit 1005, each and every page was dated, Your Honor, as well as each and every page having a signed authorship of who it was, namely inventor Steve Zavodny. So each and every one of those pages does identify. Were they witnessed by a non-inventor? So, Your Honor, on that point, first of all, that is not the law and that is not required, but second of all, they were witnessed by two people at that time in January 28, 1994, Ms. Marsha Albright. She was the Director of Engineering, as well as Bruce Smith. Two years later, those two people did end up becoming named inventors long after the writing or signature in the Ordinary Course of Business at that time. In other words, they were not non-inventors? They were not non-inventors later, but at that time, they believed they were non-inventors when they signed the document, just like a declaration, Your Honor. You take the declaration on the date it was signed, not years later, and those documents show on their face the entire invention, and that's the point, and Your Honor cited in that sua sponte order, for example, the Licati case. The Licati case identified... Let's go back. There's more. Go back to Brown for a second. Okay. Didn't this court expressly hold that an inventor's own unwitnessed documentation is not sufficient? An unwitnessed documentation is not sufficient, but that's for lab notebooks. So what this court has also stated, Your Honor, and that's not where the floor is, the floor is this, that often contemporaneous documents prepared by a putative inventor serve to corroborate an inventor's testimony, and that's directly out of the ethics... You have on page 58 of your brief, you say, documentary evidence itself can establish priority. Then you cite Brown, and in the parenthetical, you say, reversing board as inventor-generated notebook itself showed admitted facts and needed no corroboration. That is the opposite of what our court actually held in that case. That was... It was a remand, but the court stated in the Brown case that Dr. Reese's notebooks and those audio radiographs themselves do not need further corroboration, that you can look at those documents and identify the fact that an FT assay experiment took place. That was the remand portion of it. But it expressly says that those documents can't be used because they were witnessed by the inventor himself to corroborate, for example, the dates of invention. Yeah, but those were his personal notebooks. The next question becomes, is there something of independent nature? The independent nature is not limited by this court under its case law. But that's not what you said. On page 58, you claim the board reversed because the inventor-generated notebook needed no corroboration. That's your statement. Right, it needed no further corroboration. That's right. The remand was based on the fact that the board there did not look at Dr. Reese's notebooks and audio radiographs themselves. Despite the fact that Dr. Reese, the inventor, created them. That was the remand. Go back, look at the four corners of those documents, and see if the prior invention was there. It was a split decision. You're right. There's a September 20th and September 25th separate notebook dates. One of them was... Do you not see the holding? The board did not err in holding that an inventor's own, unwitnessed documentation does not corroborate an inventor's testimony about inventive facts. That is the holding in the case. That is the holding, but your honor, the documents here are different than that document. That is a personal notebook from that person, right? Inventor notebooks are different than corporate records. Where on its face, you can see in Disha, and this is footnote three out of the price case. Footnote three identifies the factors you examine. It's on page 1195 of price. It identifies the factors you examine for independent corroboration. The independent corroboration requirement is not so... Yes? So, you're arguing business records. Are you trying to establish that the business records exception applies, to hear say, applies in corroboration for patent records? What I'm saying is this, your honor, that the corroboration requirement requires evidence of an independent nature. The documents themselves can serve that, even if it's created by the inventor. So that's what I'm saying. So if you look at the documents, you look at the four corners of these documents, does it look like this was created at that time with the dates there? So the invention disclosure records, the CAD drawings in the summer, June, July, August of 1994, all dated. They all identify who created them, and they're all backed by metadata. They're all supported by independent evidence. Was the metadata introduced in this case? Absolutely. Those are all in the exhibits, your honor. And is there some expert that establishes that that metadata establishes the dates that those documents were in fact created? We have an expert, Dr. John Martins, who identifies that the documents themselves support, from a Posita standpoint, what the claimed invention is. Our expert doesn't explicitly identify that the metadata, from a scientific standpoint, supports the date. But the metadata itself shows that. The dates of last modified are shown in those documents, which were either on the date of the document itself or a day or two after, all of which are before September 27th, 1994. Again, that's that evidence of an independent nature. It doesn't require non-inventive and a non-inventor to testify. That's like saying, if we have a notebook plus a non-inventor who's his best friend or a subordinate at his employment, that's better evidence of corroboration than computer-generated metadata for that same document or for a document that's created as CAD drawings as part of an organized research program like we have here back in the early 90s, 27 years ago. So indeed, the law doesn't impose some impossible standard of independence on corroborating evidence, and it doesn't require a non-inventor witness to sign or to testify about it. In fact, there's a lot of problems with non-inventor witnesses testifying, similar to inventor witnesses testifying in and of itself. To elevate that type of evidence over, for example, computer-generated metadata is exactly the antithesis of the rule of reason. And in fact... If I'm mistaken, turn to the appendix at page 2427. I understand this to be your evidence of metadata. Is that correct? Am I missing something? One of them. One of them, Your Honor. So... And the way... Go ahead. Please stop interrupting. So it lists a bunch of file names on the left and the date modified. And you introduce no independent testimony. And when I say independent, I mean non-inventor testimony as to what these purported files correspond to. The only testimony you introduced was the inventor himself that says, oh, I'll tell you what each of these files are. So you've got a bunch of random file names, and then you've got date modified. You have no independent evidence to show what those files are. Is that correct? That's true. But Price itself, that case which was under a clear... Everything goes back to us having to just believe your inventor and a bunch of documents which he says, believe me when I tell you what they are. No, that's not accurate, Your Honor. The Colecraft case, that's what was missing. In the Colecraft case, there are... And same with the Apatar. Those cases, those documents were missing information. Here there is no such situation where the inventor is filling in a date or filling in the name of the author here. That is not true. The inventor here is filling in what purportedly each of those files are. That's what he's filling in. He's... You know, we don't have any evidence as to what those files are. The inventor is telling us, believe me when I tell you, this is the file name that corresponds to my disclosures over here. The document itself... The document speaks for itself. The document shows a file name that corresponds back to the document. Those are actual evidence. And if I may finish my thought here, and I'll reserve the rest of my time for rebuttal. That's Federal Rule of Evidence 1001D. That exhibit, for example, there, that metadata document is shown as an original. It's as if we walked in with a computer, showed the metadata on a floppy disk, and then presented it. It is not... He is not testifying to something that's not in the document itself. I'll reserve the rest of my time for rebuttal. We will save it for you, Mr. Coupom. Mr. Abdelnour? Yes. Good morning. And may it please the Court, Dennis Abdelnour, on behalf of Abilene Curt Manufacturing. Let me start with the requirement for independent evidence of corroboration, which was the subject of the questioning. And as this Court applied in Apatow and Colcraft, there is an initial threshold. There is a bright-line rule. And the requirement for independent evidence is necessary, even with the rule of reason, as we know from Apatow, Brown v. Barbicid, and Medikam. The rule of reason did not dispense with this requirement for independence. Independent evidence remains the key to the corroboration inquiry. But, counsel, we have said... Counsel, this is Judge O'Malley. We have said, though, that documents don't need to be independently corroborated, right? Judge O'Malley, you're exactly right. And so then the question becomes, did Horizon, in this case, attempt to establish any of the inventive facts solely based upon the documents? And they did not. Oh, I think... Counsel, counsel, counsel, I don't think you answered Judge O'Malley's question right. Documents don't need to be independently corroborated. It depends what they're being offered for. If an inventor's lab notebook is being offered to prove the day he conceived of something because it happens to have a pen-written date on it, does that satisfy his burden of proof for the date of conception, for example? You know what, Judge Moore, you bring up a great point. I think that's exactly the right distinction, which is the case law says you can look at a document and understand it substantively for what it shows. But exactly to your question, Judge Moore, if you're using that document to establish, let's say there's a handwritten date on it or there's a name on it, if you're trying to use that document alone to establish the date, for example, or that that person did what they purported to have done or that they did it on the date that's on the document, the document alone under those circumstances is going to require independent corroboration because just like you couldn't necessarily take a copyright date on a prior art document, you need something in addition to help prove up that that copyright date is the date that it was established. So I think that is the key distinction. And that's exactly what the testimony in this case is attempting to do. Not only is it attempting to show that those documents are what they are, that they're authenticated, but also as to the timing, as to who did what. And in here, you have no evidence that comes from anybody, any source other than inventors. And Exhibit 2007 at A2427, if I may pick up where you left off on this metadata, this isn't metadata in the sense of computer files and information that's coming out of the computer. This is solely a screenshot. And so we don't know where the screenshot came from. We don't know that the file names listed in the screenshot, we don't know what they are. We don't know that they're associated with it. I'm sorry. So, you know, you're making a valuable point. I didn't mean to cut you off. But I guess my question is, it would be different had they actually turned over real metadata which allowed you to click on each of those files and see what they were and then look at the date upon which they were last modified. Is that right? That's precisely right. That's right, Judge Moore. If they would have turned over the actual computer files, they could have done this a couple of different ways as well. If they would have offered, let's say they had an independent IT technician who puts in an affidavit and tells us what these file names are, how they're kept, where they're kept, tells us something about what that date modified means and whether it truly means that those documents haven't changed over time. That's the type of independent evidence that this court's case really does scream for and that was absent in this case, that was frankly absent in Apatow and Colcraft. Now, in both of those cases, the problem was this catch-22 of corroboration where the documents alone are being offered to corroborate inventor testimony but in turn you need the inventor testimony to help build up those documents and to show those documents are what they are. And so somewhere in that catch-22, you need that baseline level of independent corroboration in order to establish a baseline level of sufficient corroboration. Maybe it's just a choice of words but the real question about documents is are you able to prove that either they say what they say or purport to say or are you able to prove that they disclose sufficiently the information that would be needed to corroborate the inventor testimony. So it's really the credibility of the documents that we're looking for, isn't it? Yes, I mean that's exactly right. And let me point to, for example, Exhibit 2003. This is A2407 because I think this highlights the issue for the court. This is an undated, unwitnessed picture of a blue box and what appears to be a circuit board. We don't know anything about the box. There's no indications. There's no labels on it. So what we need with that particular photograph, and frankly this is very, very similar to Aperture and Colecraft, you need the inventor testimony and you've got inventors of ODNI who says, who talks about what that box is, who talks about the hardware components on the box, makes a mention and says we tested this and that it worked. There's so much in here that is fundamentally reliant solely on the inventor testimony. The document, the picture in and of itself, by the way, proves nothing. And by the way, we know that this picture was taken by the inventor for purposes of this proceeding in 2019 and it comes into the record only through the affidavit of inventors of ODNI. And so I really think that puts a fine point on the type of evidence being offered in this case where it's solely inventor testimony that does go really hand in glove with the inventor-generated documents and the two of them going together creates this Catch-22. Now the only thing below that Horizon ever pointed to, and they do, they point to it again today in the argument, is Exhibit 2005. That's the invention disclosure statement. And counsel was asked about the signatures on that document. Well, it's only witnessed by co-inventors Albright and Smith in 1993. And in the evidence in this proceeding, both Smith and Albright offered affidavits in which they swore under oath, they said as of that date, as of January 1993, we believed we as inventors had invented this invention. So this argument that they only believed years later that they were inventors runs contrary to the evidence. So... I'm kind of confused. Because you're the inventors of, aren't you the inventors of a patent claim as written in a patent? Well, exactly. They're saying today they're inventors of the challenge claims specifically that are at issue in this case. And Horizon's offering this evidence to try to establish that they had invented the specific claims of this case before the prior art here. And so if inventors Albright and Smith are now saying, yes, we were inventors of these claims because we had invented them as of January 1993, the exact same date that they were purportedly the witnesses on the invention disclosure document. In other words, they were always inventors. They were always inventors, Judge Boyd. I thought they testified that they were inventors as of 1994. Am I missing something? Well, there are certain inconsistencies, but there are two sets of claims. And so they've got one set of claims that they say we had additional features in the middle of 1994. Oh, you know what? Actually, I'm sorry. I think we're talking about January of 1994. I just had my date wrong. I apologize. January 1994. Okay, that's what I thought. But that's exactly it. So it was January 94. They said we were inventors as of that date. There's no doubt that they were co-inventors when they signed that document. So you end up with the cross-corroboration problem that this court has addressed multiple times. It's not good enough for a co-inventor to try to offer corroboration of another co-inventor. That's not independent evidence. And so the failure for independent evidence in and of itself is sufficient to sustain the board's decision below. There's multiple other reasons that this court can sustain the board's decision below, including that there's no showing and really no argument on appeal, that the board's factual findings under the rule of reason, even putting aside independent evidence, that they're anything but supported by substantial evidence. And Horizon, in its briefing, argues that the board excluded evidence, ignored evidence, or required individual documents to show all the inventive facts in and of themselves. None of those things actually occurred. The rule of reason was correctly applied. The board was quite clear, A64, for example, 67 through 71, that they looked at the totality of the evidence. They have page after page going through each document and all the testimony associated with it, and correctly found fundamental glaring gaps in the proof. And again, this is aside from the independent evidence requirement. Finally, we'll rest on our briefs, but there are multiple additional reasons to sustain the board's decision that are entirely separate from the corroboration findings, because the board went on to look at the evidence itself and what it showed. And Horizon hasn't appealed those issues. We think those in and of themselves are sufficient to affirm. If there are no... Am I correct that the board expressly found that the invention disclosure itself didn't seem to include all the elements and limitations of the challenge claims? You're exactly right, Judge O'Malley. I believe that A66, for example, the board... I'm sorry, one second. Yeah, I believe it's A66. 67, thank you. Where the board says, we've looked at the invention disclosure statement. It doesn't satisfy each and every claim limitation on a claim-by-claim basis. And if you look at, for example, A33, A63, it says that document is missing the key functional limitations, which even by inventors of ODNI's own statements in his invention disclosure statement, the software and the functionality and how the microcontroller operated was key to the invention, and 2005 in and of itself is missing those fundamental limitations. And so that's exactly right. That's another basis to sustain the board's decision below. Thank you, counsel. I thank the board. Thank you very much. Mr. Kupar, I think you have about four minutes of rebuttal time left. Are you there, Mr. Kupar? Hey, I'm sorry. I spoke in a mute. Apologies, and I'm there. So the first question was from Judge Moore. Did we provide the electronic documents here? We did. We provided that in discovery here during the PTAP proceeding, so that was provided. In response, what did Curt do? Nothing. Curt took one deposition of Zavodny, did not take the depositions of the other three witnesses, particularly Smith and Kulkarni, who developed those CAD drawings and the metadata that goes with it. It went in unrebutted. If there was any issue with that metadata, your honors, that would have been addressed through deposition or argument. It was never raised. And this court has repeatedly stated both in Price as well as DuPont and Noor that when you have unrebutted testimony, attorney argument is not rebuttal evidence to that. Number two is with respect to claims 64 and 70, that goes to that first invention disclosure of January 1994, and then the remaining claims 1 and 65 through 70, there is a difference here in the fact pattern. And that was one of the conflation points by the board here. That January 1994 invention disclosure form that inventors Zavodny provided to his company, it says to Concha, the very top, was provided to his boss, the director of engineering, Marcia Albright. She reviewed it. The first pages, she sends that off to her patent attorney, that entire document, is the invention disclosure form for claims 64 and 70. The argument that the board raised regarding that the functional limitations aren't explicitly in those documents is, again, not the law. As long as a posita can understand those circuit diagrams and understand the functions of what an accelerometer is or a microprocessor, the input circuits, the accelerometer, that's all you need here. And that's exactly what Dr. Martens, our expert, did. Again, did Curt rebut that? No. There is no rebuttal expert evidence from their rebuttal expert. If a posita would not understand the functionality of those circuits, their expert would have had a field day. No such evidence. Again, it's mere attorney argument. Finally, the invention with respect to claims 1 and 65 through 70 at the display circuit. Again, Kumar Kulkarni came on board in early 1994, worked with Bruce Smith and Marcia Albright to develop that additional display circuit, which is shown repeatedly in the exhibits on the CAD drawings. Again, those CAD drawings are independent on its face. They show it's a concha, they're normal ordinary course documents that were created. These aren't personal inventorship documents. And a final note, I think this case, if affirmed, will create bad policy and new law that would overturn literally decades of law here on its head. This is the first time, when you look at Lakati, when you look at DuPont, and similar cases along those lines, what you have are situations where there are strong organized research programs and Kodak in the Lakati case, DuPont similarly here, we're able to- I want to make sure I understand your representation. This is Judge Moore. Yes, yes. Did you indicate that you did, in fact, turn over metadata, actual metadata, and not a 100% yes. Mr. Abdonar did not respond to you properly. We did. And that is record. That is part of the evidence here. I'm looking at a brief. What is this brief? Dated January 29th, 2021, corrected response brief of appellee. Do you have a copy of that? I do. Okay. On page 13 of that brief, it says that the only thing you turned over is a screenshot listing of information with various file names. It says it is not metadata, and Horizon never introduced any metadata into the record. That is a- You didn't respond to that in your reply. And that's a false statement. Counsel, counsel. Sorry. You didn't respond to it in your reply, and there's no evidence anywhere in this appendix to the contrary. All you introduced in the appendix, over which you have complete control, is a screenshot. And that's incorrect. That's a false statement by opposing counsel in the brief. And again, if this case is affirmed on that basis- You didn't respond to it. You didn't. How in the world am I supposed to understand that counsel has completely misrepresented the state of evidence if you don't respond to it or introduce it in the appendix? We did, Your Honor. That's the- Where did you respond to it? Absolutely. We cite- Where we cite to the Federal Rule of Evidence 1001D, right there. You cite me. Since you're telling me you responded directly to that, where in your brief did you respond to it? One moment, Your Honor. It's where we identify the Federal Rule of Evidence 1001D. That was our entire point. That if you take a screenshot of the- for example, of a screenshot of a computer monitor, that's the equivalent of it being, quote, an original, unquote, under Federal Rule of Evidence 1001D. That's our entire point, both in our opening brief and reply- As long as you disclose all the underlying documentation, and you're saying- Which we did. We did. That's right. But did you do it in this proceeding, or was it in the related district court proceeding? Both. Counsel, I'm looking on page 22, and you never claim you disclosed the metadata. I'm on page 22 of your reply brief. You didn't cite me to the point, but I found it. Doesn't say you disclosed the metadata. It says you're defending the printouts as authenticated. You're claiming the printouts are good enough. That's- Right. What we did was we provided both. We provided the underlying ESI, and what we presented to the PTAB are the screenshots themselves, which again, under Federal Rule of Evidence 1001D, is more than sufficient. Same with district court. I can walk in with screenshots showing the underlying metadata, and that is sufficient. In fact, that's the Colcraft case. What happened in Colcraft- there's a little side note in Colcraft. What happened in Colcraft was the- Counsel, this is Judge Moore. Yes. I just want to express my extraordinary frustration. I believe that throughout your brief, you have exceeded the bounds of zealous advocacy, and I believe you just did the same in oral argument. You just told me in oral argument, and you can go back and listen to the recording, that you did, in fact, disclose the metadata. When I told you that in the response brief, they said you didn't, you said, we told you we did, Your Honor. I asked you where. You said, I don't know, but we did. I found where by finding- you said we did it where we talked about Federal Rule of Evidence 1001. So, I found the only place in your brief where you talked about that. You didn't point me to it, but I found it. And in that location, it never says that you did, in fact, disclose the metadata. I feel like you have exceeded what I find to be permissible in terms of your representations to this Court, and I would urge you in the future to be much more careful. I have no interest in listening to you any further because I don't trust what you're saying. I'm sorry about that, Your Honor, but that's the record evidence. We provided that in discovery here, and that's the truth. As for the corroborating evidence here of an independent nature, again, we presented 459 pages of contemporaneous business record documents. We provided computer-generated metadata. Again, we follow the Federal Rules of Evidence there, Judge, more specifically. It says there that you can provide screenshots in court or in PTAP, and that will serve as originals. And we even provided the underlying ESI to opposing counsel in both this case as well as the district court case, which on this issue was stated when we went so far as to provide it in both. We provided... Okay, thank you. You have exceeded your time. We have your argument. The case is submitted. Thank you, Your Honor. The Honorable Court is adjourned until tomorrow morning at 10 a.m.